AGNO MARENGO v. GREAT NORTHERN RAILWAY COMPANY.[1]

| 84 | 397 |
| 86 | 247 |

November 22, 1901.

Nos. 12,745, 12,746—(114, 115).

**Railway—Fence.**

Railway companies are imperatively required by G. S. 1894, §§ 2692–2695, to construct and maintain fences on either side of their tracks, which duty inures to the benefit of children of tender years, who may, by reason of negligence in that respect, be injured. Rosse v. St. Paul

[1] Reported in 87 N. W. 1117.

& D. Ry. Co., 68 Minn. 216, and Nickolson v. Northern Pac. Ry. Co., 80 Minn. 508, followed.

## Same.

This statutory duty to fence its tracks is subject to implied exceptions where legally platted but unopened streets run over and across the tracks. In such places the railroad company may not obstruct streets by fencing, although not opened by the public authorities.

## Railway Yard.

*Held,* upon the facts disclosed by the evidence in this case, that defendant's tracks at the scene of an accident in Northeast Minneapolis did not constitute such a yard as to subject the place to an implied exception to the fencing statutes upon the ground that fences and cattle guards would endanger the lives of its employees.

## Judgment notwithstanding Verdicts.  -

*Held,* also, upon the evidence in these cases, that the orders of the trial court directing judgments in these cases notwithstanding the verdicts therein were erroneous, for the reason that it seems fairly probable that in the respects upon which the court acted in such orders plaintiff might supply omissions on proof on another trial.

## Parallel Tracks.

The fact that several railroad tracks run parallel to each other, and that a track of another company is also immediately adjacent and parallel thereto, will not excuse either company from complying with the statutory obligation to fence their tracks for the benefit of the public.

Separate actions in the district court for Hennepin county by Agno Marengo, as father of Camile Marengo, an infant, to recover $35,000 for personal injuries to the boy, and by Agno Marengo individually to recover $3,500 for loss of services of his son by reason of such injuries. By consent the two cases were tried together before Elliott, J., and a jury, which rendered separate verdicts in favor of plaintiff; in the first case for $8,000, and in the second case for $1,200. From an order granting a motion for judgment in favor of defendant in each case notwithstanding the verdict and denying a new trial, plaintiff appealed. Reversed, and a new trial granted.

*F. D. Larrabee,* for appellant.

*W. E. Dodge, Rome G. Brown* and *Charles S. Albert,* for respondent.

LOVELY, J.

Camile Marengo, an infant of tender years, went upon the tracks of defendant in Northeast Minneapolis, and while there was seriously injured by one of its trains. The father of Camile brings suit to recover for the injuries to his minor son under the statute (G. S. 1894, § 5164); also a separate action for the damages which he sustains as the child's parent. The cases were tried together. Separate verdicts were rendered for plaintiff in each case. Defendant moved for judgments notwithstanding the verdicts, or for new trials in the alternative. The trial court ordered judgments for the defendant, and specifically denied the motion for a new trial in each case. Plaintiff appeals from the respective orders, which brings the entire record here for review.

A description of the place of the accident is essential to a proper understanding of the questions to be reviewed. Four tracks of defendant extend in a northwesterly and southeasterly direction parallel to each other for more than a half mile through what the defendant designates as its "Northeast Minneapolis Yard." There is also, on the easterly side of these tracks, running parallel and in close proximity thereto, a track of the Northern Pacific Railway Company. The land adjacent to the railway tracks on the east for several hundred feet between the same and Monroe street—a thoroughfare running due east and west some distance therefrom —is an open field, but we are required by the concessions in the pleadings and the course of counsel at the trial to treat such open prairie as platted from the tracks to the line of Monroe street, although unopened by the city authorities at the time of the accident. Twenty-second and Twenty-third avenues are open and traveled from the east to Monroe street, but are not open further west, although their lines extend on the plat over the field, as well as across the railway lines. Neither the defendant nor the Northern Pacific Railway Company have fences adjacent to their right of way east of their tracks.

The injured minor was a young lad of less than seven years, living with his parents. He left home on the morning of the accident. Seeing some boys west of the tracks, supposing they were his brothers, he ran over to the place where they were. Finding they were not the persons he thought, he immediately started to return, and while on one of defendant's tracks was thrown or fell under the wheels of a freight car then being moved by a locomotive, which caused the injury complained of.

The substantive basis of plaintiff's right to recover is defendant's neglect to maintain fences, as required by law, on the east side of its tracks, by reason of which the young lad was permitted, without legal fault on his part, to stray upon the place of danger. The right to recover for injuries to children in such cases has been already settled, and we are not inclined to disturb the rule laid down in the late decisions of this court in respect to the obligation of railway companies in that respect. Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, 71 N. W. 20; Nickolson v. Northern Pac. Ry. Co., 80 Minn. 508, 83 N. W. 454.

Railways must observe the statute, save where there is some exception by implication based upon public policy, necessity or convenience, which requires such exception as station grounds, streets, public places, etc. Greeley v. St. Paul, M. & M. Ry. Co., 33 Minn. 136, 22 N. W. 179. In these cases the burden of showing the exception rests upon the company. Cox v. Minneapolis, Sault Ste. M. & A. Ry. Co., 41 Minn. 101, 42 N. W. 924.

An exception would probably also apply to yards devoted distinctively to switching and the work of receiving, distributing, or making up and sending out trains, whenever the legal duty of maintaining cattle guards at highway crossings might seriously endanger the lives of switchmen in the use of the tracks. This exception is not, however, in this case, for the evidence does not establish such a use of the tracks referred to as would bring into operation conditions that would make it applicable. There were switches, to a limited extent, several hundred feet distant from where the boy was hurt, on either side of the place. It may be stated, however, that the railroad tracks in this case were similar in that

respect to those in Nickolson v. Northern Pac. Ry. Co., supra, the switching therein being merely incidental to the movements of trains.

The exception to the statute, being based upon reason and convenience, cannot be extended beyond what reason and convenience require, so as to deprive the public of the benefit of the proper police regulations provided in such cases for its protection. Nor does the fact that another railroad company runs a parallel track on the east side of defendant's tracks relieve it from its statutory duty to fence its tracks. The obligation to fence is absolute. Public interests are involved in its performance, and, if the defendant company could not so arrange with the adjacent company that the entire tracks would be protected in the manner required by law, it was in duty bound to see that its own right of way was properly protected. It could not relieve itself from its own negligence in that respect by showing that another railroad company, similarly situated, had also been guilty of the same fault. Railway v. Allen, 40 Oh. St. 206.

Undoubtedly, public streets furnish an exception to the duty of the railroad to fence, and defendant could not be required, or even permitted, to build fences across legally laid-out highways. That this would apply to traveled highways is, of course, too plain to admit of doubt. Greeley v. St. Paul, M. & M. Ry. Co., supra. But it was urged on the trial in behalf of plaintiff that the avenues crossing the platted but unopened field, and extending upon and over the tracks, did not constitute an implied exception to the statute in the same degree as if they had been formally opened and used for travel by the public.

We cannot adopt this view. The railroad company had nothing to do with the platting or the opening of these streets, but it was legally bound to recognize the right of the public therein. If it did not, it might be liable to prosecution. Hence the company might properly say that such streets, though unused, were liable to be opened at any moment by the authorities. They were the subject of public control, and therefore furnished a proper exception to the extension of fences across the same. But of de-

84 M.—26

fendant's sure and perfect obligation to fence along the tracks between the platted and unopened streets there can be no question; and, if the evidence tended to show that the child strayed upon the track at a point between the unopened highways where no fences had been constructed, it was the duty of the trial court, under proper instructions, to have submitted the plaintiff's right to recover to the jury.

The claim of plaintiff in this respect is that the young lad went upon the tracks between Twenty-second and Twenty-third avenues, where it was, as we have held, defendant's duty to maintain a fence. This, under the evidence, was an important and vital issue in the case, and, as we understand the views of the trial court in ordering the judgments absolute for defendant, it did so for the reason that there was a failure on the part of the plaintiff to establish that fact sufficiently and distinctively. It is not to be doubted that the burden rested upon plaintiff to show that the child strayed upon the tracks at a point where it was the duty of the defendant company to fence its tracks; and if it has failed in this respect, or if the testimony is, as claimed by defendant, so vague and uncertain in its tendency to show where the child went upon the right of way that it is just as probable that he went there at a place where defendant was not in duty bound to fence as at a place where it was, plaintiff could not recover. But, conceding this, we do not think that the trial court was necessarily justified in ordering judgments against the verdicts in favor of the defendant.

We are unable to interpret Laws 1895, c. 320, authorizing the entry of judgment by the court notwithstanding a verdict, so as to deprive a litigant of the right to have the facts in a common-law issue determined by the jury instead of absolutely by the court. Such an interpretation would deprive the litigant of his right of trial by jury. To sustain the statute, it must be construed so as to harmonize with that constitutional right. Cruikshank. v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958; Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 671; Kreatz v. St. Cloud School Dist., 79 Minn. 14, 81 N. W. 533; Bragg v. Chicago, M. & St. P. Ry. Co., 81 Minn. 130, 83 N. W. 511.

Evidence to locate the place where the child strayed upon the track is, upon this record, somewhat vague and indefinite, but it seems reasonably apparent from a review of the same that upon another trial the failure of proof in that respect could be remedied, and we must, for that reason, in view of previous rulings, reverse the order of the trial court ordering judgments in these cases in favor of the defendant. It is very clear that the court denied the part of the alternative motion asking for a new trial upon the ground that it deemed it its duty to direct a judgment with which a new trial would be radically inconsistent. It follows that the trial court has not exercised its discretion upon the weight of the testimony, and we shall therefore decline to anticipate action in that respect, or to consider that question, which embraces an original function of the lower court, rather than of a court of review.

The orders directing judgments in favor of defendant in these cases are reversed, and each case is remanded for a new trial upon the merits.